IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GORDON R. SIMMONDS, | § | |
| TDCJ-ID # 932489, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-1015 |
| | § | |
| KATHY A. LAUGHLIN, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Gordon R. Simmonds, an inmate incarcerated in the Texas Department of Criminal Justice–Institutional Division, proceeding *pro se* and *in forma pauperis*, filed a civil rights complaint under 42 U.S.C. § 1983 against correctional officers Kathy A. Laughlin, Joanna Alford, Kimberly Woodall, Wesley W. Pratt, and Diana R. Leonard. Defendants filed a motion for summary judgment (Docket Entry No. 20), and a motion for a protective order (Docket Entry No. 15). Simmonds filed a response to the motion for summary judgment (Docket Entry No. 23), a motion for an extension of time to file the response (Docket Entry No. 22), and a motion to compel additional discovery (Docket Entry No. 29). Simmonds also filed a notice to the Court (Docket Entry No. 24), complaining of retaliation by a prison guard and requesting release from confinement.

After reviewing the pleadings and evidence, the Court will grant the defendants' motion for summary judgment, and dismiss the remaining motions as moot.

## I. BACKGROUND AND CLAIMS

Simmonds alleges that on December 3, 2003, he was assigned to share a cell with inmate Leon Brown. Brown began verbally harassing, threatening, and "asserting domination over" Simmonds. Simmonds sent an inmate request to the unit classification committee on December 14, 2003 complaining of Brown's actions and requesting a cell change for fear of being assaulted. No action was taken, and defendants, who were at some point members of the unit classification committee, assert that they never received Simmonds' request. Simmonds further claims that on December 22, 2003, Brown choked him and struck him on the face. Medical records show that Simmonds was examined by clinic staff, who noted red fingermarks on his neck and face. Simmonds claims that the defendants, who were members of the unit classification committee, were deliberately indifferent to his safety and failed to protect him from Brown's assault.

Defendants seek dismissal of the lawsuit based on, *inter alia*, lack of deliberate indifference to Simmonds' safety, and Eleventh Amendment immunity. They further contend that any injury sustained by Simmonds was *de minimis* and insufficient to support an Eighth Amendment claim for failure to protect. (Docket Entry No. 20).

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

In deciding a motion for summary judgment, the court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). All evidence must be construed "in the light most favorable to the nonmoving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Rodriguez v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996). However, the nonmovant cannot rely on conclusory allegations or unsubstantiated assertions to establish a triable issue. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1047 (5th Cir. 1996).

### III.   ELEVENTH AMENDMENT IMMUNITY

To the extent that Simmonds seeks damages against defendants in their official capacities, such claims are barred under the Eleventh Amendment. A suit for damages against an officer in his official capacity is a suit against the state. *Hafer v. Menlo*, 502 U.S. 21, 24 (1991). The Eleventh Amendment bars civil rights lawsuits brought by inmates seeking monetary damages against TDCJ officials in their official capacities. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Accordingly, defendants are entitled to summary judgment on Simmonds' claims brought against them in their official capacities.

### IV.   EIGHTH AMENDMENT CLAIMS

Defendants seek summary judgment dismissing Simmonds' Eighth Amendment claims, and allege that they were not deliberately indifferent to any substantial risk to

Simmonds's safety. Defendants further argue that Simmonds fails to show anything more than a *de minimis* injury. (Docket Entry No. 20.)

The Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious health and safety needs of prison inmates. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, an inmate must prove objectively that he was exposed to a substantial risk of serious harm, and that prison officials acted or failed to act with deliberate indifference to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The deliberate indifference standard is a subjective inquiry; the claimant must establish that the prison officials were actually aware of the risk, yet consciously disregarded it. *Id.* at 837, 839; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002). It is only the deliberate indifference and unnecessary and wanton infliction of pain or acts that are repugnant to the conscience that constitute conduct proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-106. Liability occurs only if the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847.

Such Eighth Amendment claims are not actionable unless there is a showing of physical injury resulting from the allegedly unconstitutional conduct. *Calhoun v. Hargrove*, 312 F.3d 730, 735 (5th Cir. 2002). Not every injury suffered by a prisoner at the hands of another rises to the level of a constitutional violation. *Farmer v. Brennan*, 511 U.S. 825 (1994). To be actionable, the injury need not be significant, but it must be more than *de*

*minimis*. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). The medical records submitted by defendants show that following the alleged incident, clinic staff observed finger-like red marks on Simmonds' neck and face. No other marks or bruising were noted, and Simmonds was released back to his cell. (Docket Entry No. 20, Exhibit B). In describing his injuries, Simmonds himself admits that his injuries were *de minimis*. (Docket Entry No. 6, p. 6). The Court has carefully reviewed the records, and finds no probative evidence that Simmonds suffered any physical injury beyond *de minimis* as a result of being choked or struck by Brown on December 22, 2003.

Even assuming without deciding that Simmonds was exposed to a substantial risk of serious harm and suffered more than a *de minimis* injury, nothing in the record supports his assertion that defendants acted with deliberate indifference to that risk. To establish deliberate indifference under an Eighth Amendment claim, an inmate must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the inmate's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). It is the "obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct" prohibited by the Eighth Amendment. *Bradley*, 157 F.3d at 1025. Nothing in the record here shows that defendants were aware that not moving him to another cell would pose a serious safety risk to him. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (holding that an inmate must show a culpable

5

or punitive state of mind on the part of the prison official accused of an Eighth Amendment violation). To the contrary, Simmonds' own affidavit (Docket Entry No. 6) shows that he and Brown were having on-going disagreements over sleeping arrangements, privacy, and the amount of time Simmonds spent in the cell. Simmonds alleges that he "dropped an I-60 in the mail box, directed to the UCC, wherein I requested that either Brown or I be moved. To date, I have not received a response." (*Id.*) He further alleges that on the day before Brown choked him, he and Brown had an intense argument over sleeping arrangements, during which Simmonds jumped up and told Brown that, "if he wanted to fight let's get it on." (*Id.*)

Records of the prison investigation of the incident reveal that neither Simmonds nor Brown had a record of previous "incidents of this nature." (Docket Entry No. 20, Exhibit A, Offender Protection Investigation Form: Investigation Details, p. 2). Within the report, the prison investigator noted that, "Even thought Offender Simmonds had marks on his neck consistent with being choked, he failed to tell the block officer of the incident and went to breakfast before notifying me of the incident. The possibility that he (Simmonds) inflicted the marks to his neck is probable, he may have did it to get back at Offender Brown." (*Id*). After the incident, Simmonds told investigators that, "The bottom line is [that] our schedules clashed and he did not like it because I was not going to do stuff like he said. I'm not going to let anyone tell me how to live and he just couldn't believe I was doing all these people's legal work for free. He just did not understand. All of his cell mates asked to get moved." (*Id.*, Inter-Office Communications).

6

Simmonds fails to present probative summary judgment evidence that defendants were aware of facts from which an inference of an excessive risk to his safety could be drawn, that they actually drew an inference that such potential for harm existed, and that they deliberately ignored the potential for harm. There being no probative summary judgment evidence that defendants were deliberately indifferent to Simmonds' safety, or that he sustained any injury more than *de minimis*, his failure to protect claims will be dismissed.

## V.  PLAINTIFF'S NOTICE TO THE COURT

In his notice to the Court (Docket Entry No. 24), Simmonds complains that on July 7, 2005, a prison officer retaliated against him by filing a false disciplinary case against him, locking him in pre-hearing administrative segregation, and threatening to send him to Brownsville. Simmonds requests immediate release from administrative segregation and a transfer to the Federal Bureau of Prisons.

The Court construes Simmonds' pleading as a motion for leave to amend his complaint to raise a claim for retaliation against a new defendant. His retaliation claim is separate from and independent of the claims brought against the defendants in this case, and may be brought in a separate lawsuit. Leave to amend is **DENIED**. To the extent Simmonds challenges and seeks immediate release from his administrative segregation confinement, he seeks relief sounding in habeas, which should be sought through a habeas proceeding. Lastly, this Court has no authority to order Simmonds transferred to federal prison.

## VI.  CONCLUSION AND ORDER

For the above reasons, the Court **ORDERS** as follows:

(1) Defendants' motion for summary judgment (Docket Entry No. 20) is **GRANTED**.

(2) Defendants' motion for a protective order (Docket Entry No. 15) is **DENIED AS MOOT**.

(3) Plaintiff's motion for an extension of time to file a response (Docket Entry No. 22) is **DENIED AS MOOT**.

(4) Plaintiff's motion to compel discovery (Docket Entry No. 29) is **DENIED AS MOOT**.

(5) Plaintiff's motion to amend complaint (Docket Entry No. 24) is **DENIED**.

(6) This case is **DISMISSED WITH PREJUDICE**.

All other pending motions and requests for relief are **DENIED**.

**SIGNED** on this 7th day of March, 2006.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE